612 So.2d 969 (1993)
Kathy K. McHALE, Plaintiff/Appellee,
v.
John Michael McHALE, Defendant/Appellant.
No. 24,384-CA.
Court of Appeal of Louisiana, Second Circuit.
January 20, 1993.
*970 Robert Levy, Ruston, for plaintiff/appellee.
Shotwell, Brown & Sperry by C.A. Martin, III, Monroe, for defendant/appellant.
Before MARVIN, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff in rule, John Michael McHale, appeals from a trial court judgment which rejected his request for a reduction in child support payments and found him to be in arrears for child support in the amount of $1,945.00. We affirm the trial court judgment awarding child support arrearages to his former wife, Kathy Kincannon McHale. However, for the following reasons, we reverse that portion of the trial court judgment denying Mr. McHale a reduction in his child support obligation.

FACTS
Mr. and Mrs. McHale were married on July 21, 1979, in Ruston, Louisiana where they established their matrimonial domicile. Two children were born of the marriage; a daughter, born May 31, 1982 and a son, born October 28, 1983. The McHales were judicially separated on October 13, 1986. A judgment of divorce was rendered on September 17, 1987.[1] The parties were awarded joint custody of the children and Mrs. McHale was named the domiciliary parent. Mr. McHale was ordered to pay $1,500.00 per month in child support until the matrimonial domicile was sold. Thereafter, he was to pay child support in the amount of $1,000.00 per month.
This issue of child support was again addressed on August 26, 1988. A judgment *971 was signed and filed in which Mr. McHale was ordered to make his child support payment of $1,500.00 for the month of August 1988. The court then raised Mr. McHale's child support obligation by $130 per month. This increase was to continue until the community was liquidated.[2] Therefore, according the terms of the new judgment, Mr. McHale was to pay a total support obligation of $1630 per month. Further, we note that the record in this case does not indicate that the community has been liquidated.
On September 16, 1991, Mr. McHale filed the present rule for decrease in child support, alleging changes in his employment which resulted in a significant reduction in his income. He also alleged that Mrs. McHale had received increases in salary since the prior child support award was set. He contended that these factors, along with the recent promulgation of child support guidelines in LSA-R.S. 9:315 et seq., constituted a change in circumstances warranting a decrease in his child support obligation.
Mrs. McHale filed a counter rule for arrearages. She alleged that Mr. McHale failed to make one half of his child support payment for May, 1989 and all of the payment for September, 1990, and therefore, he was in arrears in the amount of $1,945.00.
A hearing on both rules was held on October 14, 1991. Mr. McHale testified that at the time the child support obligation was set, he was employed as general manager of a car dealership in Ruston, sometimes earning as much as $70,000 annually. In April, 1990, he was terminated from that position. He then moved, with his new spouse, to Florida where his father owned an interest in an automobile dealership. He was originally promised a salary of $5,000.00 per month to work in his father's business. However, due to economic conditions in the area, Mr. McHale's income was reduced to $4,000.00 per month after only two months employment.
Mr. McHale worked in Florida until August, 1991, when he left his job. He was not terminated from his position. He voluntarily chose to leave his Florida home and job and return to Ruston. He claimed that he moved back to Louisiana to be near his children. Mr. McHale's new spouse is also a native of the Ruston area.
Mr. McHale testified that upon his return to Ruston he was unable to secure a managerial position at any automobile dealership in the area. However, he obtained employment in September, 1991 as a car salesman at a local Chevrolet dealership. The average salary for a salesman at that dealership was approximately $1,946.00 per month. Mr. McHale had earned approximately $2,200.00 for the month of September, 1991, the only month he had been so employed at the time of trial.
Mr. McHale testified that since his return to Louisiana, he had depleted his present wife's savings because of his loss of income and had taken numerous drastic measures in order to adjust his lifestyle, such as renting an inexpensive home. He also testified he had substantial debts that he wished to begin paying. He stated he was not trying to deprive his children but rather was making lifestyle changes due to the tremendous loss of income. However, Mr. McHale admitted that his father still owned an interest in the Florida dealership and that he could have stayed at his job in Florida making a much higher salary.[3]
Mrs. McHale testified that the children's expenses had increased since the time the support obligation was originally set. She testified that they had significant medical expenses and required some tutoring. Mrs. McHale testified that she had obtained *972 her present employment in January, 1987 and was currently earning a gross monthly salary of approximately $1,500.00.
Mrs. McHale also testified that in the four week period after Mr. McHale's return to Louisiana, he had not fully exercised his visitation rights with the children. She claimed he had the children for one weekend visitation and he saw the children on two other occasions for approximately an hour to an hour and a half. Mrs. McHale testified that she never interfered with the children's communications or visitation with their father in Florida so as to compel him to return to Louisiana.
In regard to the alleged child support arrearages, Mrs. McHale testified that in May, 1989, Mr. McHale had only paid her one-half of the amount of support due for that month. After the State of Louisiana obtained an income assignment affecting Mr. McHale's salary, Mrs. McHale informed the State of this arrearage but no payment was ever made. Regarding the alleged arrearage in September, 1990, Mr. McHale stipulated that no payment had been made for that month.
Following a review of the testimony and evidence, the trial court found that because Mr. McHale voluntarily left his lucrative employment in Florida to take a lesser position in Louisiana, no reduction in child support was warranted. The court stated that although Mr. McHale claimed he returned to Louisiana to spend more time with his children, he had not exercised full visitation rights since reestablishing his home in this state. The court also found that Mr. McHale had frequently been before the court for child support arrearages during the time he had a higher income and was able to afford a luxurious life-style for himself. The trial court continued Mr. McHale's child support obligation at $1,130.00 per month and found that Mr. McHale owed $1,945.00 in arrearages. Judgment to this effect was entered in favor of Mrs. McHale.
Mr. McHale appealed, contending that the trial court erred in holding that his change in circumstances did not warrant a reduction in child support. Mr. McHale further contends that the trial court erred in the amount of arrearages awarded to Mrs. McHale, arguing that she failed to prove he had not made the full child support payment for May, 1989.

CHANGE OF CIRCUMSTANCES
The trial court found that Mr. McHale was not entitled to a reduction in his child support obligation because his change in circumstances in moving from Florida to Louisiana was voluntary. On appeal Mr. McHale objects to this ruling, but also makes the alternative argument that an involuntary change of circumstances was shown by the reduction of his salary from $5,000 to $4,000 per month while he was employed in Florida. He argues that at the very least, a reduction should be granted on the basis of the involuntary change in circumstances. We find that this alternative argument has merit.
LSA-R.S. 9:311 provides in pertinent part:
An award for support shall not be reduced or increased unless the party seeking the reduction or increase shows a change in circumstances of one of the parties between the time of the previous award and the time of the motion for modification of the award.
A child support obligation is subject to modification only when justified by the circumstances, and the party seeking the modification has the burden of proving that a change in circumstances has occurred since the fixing of the prior award. Hall v. Hall, 535 So.2d 790 (La.App. 2d Cir.1988); Bailey v. Bailey, 527 So.2d 1030 (La.App. 2d Cir.1988), writ denied 528 So.2d 565 (La. 1988); Culpepper v. Culpepper, 514 So.2d 701 (La.App. 2d Cir.1987).
Once the obligor spouse proves a change in circumstances, he is presumed to be entitled to a reduction in his support obligation. The burden then shifts to the party opposing the reduction to either disprove the change or otherwise overcome the presumption that the obligor is entitled to a reduction by proving that the change was caused by the obligor's own voluntary *973 actions or by proving other facts mitigating against the reduction. Kaye v. Kaye, 558 So.2d 1352 (La.App. 4th Cir.1990); Crane v. Crane, 541 So.2d 250 (La.App. 4th Cir. 1989).
Proof of a change in circumstances does not justify the reduction of the child support award where an obligor's inability to pay arises from his own voluntary actions. Crane v. Crane, supra; Kaye v. Kaye, supra; Lustig v. Lustig, 552 So.2d 516 (La.App. 2d Cir.1989).
It is well settled that one may not avoid a support obligation by quitting work. It is equally clear, however, that a reduction in child support payments may be ordered on a showing by the party seeking the reduction that a change in circumstances has occurred; that the voluntary change of circumstances is reasonable and justified; that he or she is in good faith in not attempting to avoid his alimentary obligation; and his or her action will not deprive the child or children of continued reasonable financial support. Fanguy v. Fanguy, 468 So.2d 667 (La.App. 4th Cir. 1985).
Appellate courts have focused upon these factors in determining whether to grant a reduction in support obligations based upon voluntary changes in circumstances. Where obligors have temporarily terminated their employment to obtain additional education which will ultimately result in higher income, the courts have found the obligors reasonable and justified in their voluntary change of circumstances. See Massingill v. Massingill, 564 So.2d 770 (La.App. 2d Cir. 1990); Fanguy v. Fanguy, supra; Mosley v. Mosley, 348 So.2d 225 (La.App. 3d Cir.1977), writ denied 350 So.2d 1213 (La.1977); Daigre v. Daigre, 527 So.2d 9 (La.App. 3d Cir.1988).
Further, where the obligor spouse terminates his employment due to the financial inability of his company to continue his services or because of a drastic negative change in circumstances at the employment, courts have found the obligor acted reasonably and was justified in voluntarily changing jobs and moving to different locations. See Goodall v. Goodall, 561 So.2d 867 (La.App. 2d Cir.1990); Fanguy v. Fanguy, supra.
However, where the obligor has a high paying job and appears to change circumstances voluntarily simply to reduce or avoid his child support obligation, the courts have found the obligor not to be in good faith in the voluntary change of circumstances and not entitled to a reduction in child support. See McKenna v. Steen, 422 So.2d 615 (La.App. 3d Cir.1982), writ denied 429 So.2d 157 (La.1983).
The trial court has wide discretion in determining the credibility of witnesses and its factual determination will not be disturbed on appeal absent of showing of manifest error. Ussery v. Ussery, 583 So.2d 838 (La.App. 2d Cir.1991). Whether an obligor is in good faith in terminating his employment is a factual determination and the trial court's credibility evaluation is subject to great weight. Goodall v. Goodall, supra.
As stated by the trial court, it is undisputed that Mr. McHale has shown a change in circumstances. It is also undisputed that his change in circumstances in leaving his job in Florida and returning to Louisiana was voluntary. The trial court was not manifestly erroneous in finding that Mr. McHale was unjustified in leaving his lucrative employment in Florida and returning to Louisiana to work at a greatly reduced salary.
The only reason cited by Mr. McHale in leaving his employment in Florida was to be near his children in Louisiana. However, as the trial court found, since arriving in this state, Mr. McHale has failed to fully exercise his visitation rights.
Further, we note as did the trial court, that Mr. McHale has a long record of accruing arrearages in his child support obligations requiring his former spouse to bring him back into court on numerous occasions to have the arrearages made executory.
We further note that, unlike obligors in other cases who have temporarily changed their circumstances so as to reap long-term *974 economic benefits for themselves and their children, such as obligors who have sought additional education, Mr. McHale's voluntary change in circumstances does not appear to be temporary nor is it aimed at achieving long-range benefits for his children.
Therefore, the trial court did not err in refusing to grant a reduction in Mr. McHale's child support obligation based upon his action in voluntarily leaving a $4,000 per month job in Florida to take a job in Louisiana paying $2,200 per month.
However, we agree with Mr. McHale's alternative claim that there was also a change in circumstances while he was employed in Florida when his salary was decreased from $5,000 to $4,000 per month. This reduction in salary was not the result of any voluntary action on the part of Mr. McHale. Based upon the showing of an involuntary change in circumstances, Mr. McHale is entitled to a reevaluation and reduction of his monthly child support obligation under the child support guidelines of LSA-R.S. 9:315 et seq.
When the prior support obligation was set, Mr. McHale was employed in a managerial position at an automobile dealership in Ruston, Louisiana. At that time, he was earning $50,000 to $70,000 per year. However, in April, 1990, his employment at that dealership was terminated. Mr. McHale then obtained employment in Florida, at a dealership partially owned by his father, earning $5,000 per month, or $60,000 per year. Approximately two months after his arrival in Florida, Mr. McHale's salary was reduced to $4,000 per month, or $48,000 per year. This reduction in salary was attributed to the poor economy and was not attributable to any voluntary action on the part of Mr. McHale. Therefore, the termination of Mr. McHale's employment as a manager in Louisiana, his move to Florida, and his reduction in salary after arriving in Florida constitute involuntary changes in circumstances entitling Mr. McHale to a reduction of his child support obligation under the child support guidelines.
Because we find that Mr. McHale's return to Louisiana was voluntary and that had he remained in Florida he would be earning $4,000 per month, we find that he is currently underemployed. Therefore, we evaluate his child support obligation based upon a gross monthly income of $4,000. See LSA-R.S. 9:315.9. Mrs. McHale testified that she has a gross monthly income of $1,500. Therefore, the parties' combined adjusted monthly gross income is $5,500.
Based upon this figure, under the schedule of basic child support obligations set forth in LSA-R.S. 9:315.14, the monthly obligation for two children is $1,160. Mr. McHale's share of this amount is 73 percent. Therefore, he owes 73 percent of $1,160 per month in child support. Accordingly, we set Mr. McHale's monthly child support obligation at $850.

CHILD SUPPORT ARREARAGES
Mrs. McHale alleged that Mr. McHale failed to make any payment for the month of September, 1990. She also contended that Mr. McHale failed to make one-half of the child support payment for May, 1989 in the amount of $815.00.[4] Thus she alleged that Mr. McHale was $1,945.00 in arrears. Mr. McHale stipulated at trial that he had not made the payment of $1,130 for September, 1990. However, he disputes that the half payment for May, 1989, in the amount of $815.00, was not made. This argument is meritless.
Mrs. McHale testified that in May, 1989, Mr. McHale was making support payments to her directly. She testified that it was not until June, 1989, that she requested the State of Louisiana, through the Department of Health and Human Resources, to collect payments for her. Mrs. McHale testified that her former spouse made one payment of $815.00 to her in early May, 1989, but failed to make the second payment of $815.00 for that month.
*975 At trial, Mr. McHale offered no proof that the disputed payment had been made. Under these facts, we find the trial court was correct in awarding Mrs. McHale $1,945.00 in past due child support, representing the payment of $1,130.00 for September 1990 and the second payment for May 1989 of $815.00.

CONCLUSION
For the reasons stated above, we affirm the trial court judgment awarding Mrs. Kathy Kincannon McHale $1,945.00 in past due child support.
However, we reverse that portion of the trial court judgment refusing to grant Mr. McHale any decrease in his child support obligation. In accordance with the reasons set forth above, we find a decrease in Mr. McHale's child support obligation is justified.
Accordingly, it is ordered, adjudged and decreed that John Michael McHale pay child support to Mrs. Kathy Kincannon McHale in the amount of $850 per month, from the date of filing of the rule for decrease. Costs are assessed one-half to Mr. McHale and one-half to Mrs. McHale.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] After the divorce, Mr. McHale remarried. Nevertheless, we have continued to refer to Kathy Kincannon McHale as Mrs. McHale throughout this opinion.
[2] It appears from the record that at the time the present rule for reduction was filed, the matrimonial domicile had been sold and Mr. McHale's monthly child support obligation was $1,130 per month.
[3] Mr. McHale's present spouse had recently become employed in Louisiana and was earning a gross income of $300.00 per week, plus commissions. However, there is insufficient evidence in the record concerning the effect of this income on Mr. McHale's present situation to justify consideration of that income in our calculation of Mr. McHale's support obligation under the child support guidelines, as discussed infra.
[4] The record shows that at the time this arrearage occurred, Mr. McHale had been ordered by the court to pay Mrs. McHale $1,130.00 per month in child support and $500.00 for the former community home which had not yet been sold. This amount totaled $1,630.00 per month and Mr. McHale was to make two payments per month of $815.00 each.